IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ANTOINE ACEVEDO,         :     No.: 3:15-cv-02035
      Plaintiff,       :
                       :     (Judge Caputo)
      v.              :     (Magistrate Judge Saporito)
                       :
STROUDSBURG SCHOOL   :
DISTRICT,                :
      Defendant.      :

## REPORT AND RECOMMENDATION

This is a *pro se* employment discrimination case. In his complaint (Doc. 10), the plaintiff, Antoine Acevedo ("Acevedo") claims that the defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq., on the basis of race discrimination and retaliation, and 42 U.S.C. §1983 on the basis of a due process violation. This matter is before the court on a motion to dismiss (Doc. 8) filed by the defendant, Stroudsburg School District (the "school district"). The parties have filed their respective briefs.[1] Based upon the court's review of the pleadings and motion paper,  it is recommended that the motion to dismiss (Doc. 8)

---

[1] On February 9, 2016, Acevedo filed his brief in opposition to the motion to dismiss. (Doc. 10). However, the brief, as filed, ended abruptly at page 4. We ordered Acevedo to file a complete copy of his brief within 10 days from June 23, 2016. (Doc. 11). To date, Acevedo has failed to do so.

be granted in part and denied in part.

I.   Procedural History.

On October 19, 2015, Acevedo filed a complaint (Doc. 1) seeking damages for race discrimination, harassment, and retaliation. He named his former employer, the school district as the defendant.

On January 22, 2015, the school district filed the instant motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 8). The school district filed its brief in support thereof on February 5, 2016. (Doc. 8). Acevedo filed his incomplete brief in opposition on February 9, 2016. (Doc. 10).   In its motion to dismiss, the school district asserts that (1) the complaint fails to establish a claim of race discrimination or retaliation; (2) Acevedo failed to establish a §1983 claim under the Fourteenth Amendment; and (3) Title VII does not permit an award of punitive damages. Alternatively, the school district requests that the plaintiff replead as the complaint is vague or ambiguous preventing it from responding.   The matter is ripe for disposition.

II.   <u>Facts</u>

Acevedo's complaint consists of three claims: (1) a Title VII racial discrimination claim; (2) a 42 U.S.C. §1983 civil rights claim based upon a Fourteenth Amendment violation; and (3) a Title VII retaliation claim. He alleges that he is an African American, who entered into a three year contract with the school district to work as a computer technician commencing December 6, 2012. (Doc. 1 ¶ 3). Acevedo further alleges that he worked with five caucasian people in an office warehouse at the back of the school district's campus. (<u>Id.</u>). He alleges that the work environment was hostile and discriminatory, and at times he was the subject of "racial epithets which made the workplace intimidating and/or abusive." (<u>Id.</u>). He alleges that he was terminated without a hearing by the school district on September 17, 2014, as a result of an altercation with a co-worker, Dave Snook. (<u>Id.</u>).

He alleged ten instances where he claims the school district acted in a discriminatory, intimidating, and/or abusive manner. He alleged that, on January 4, 2013,  acting IT director  Joe Curran ("Curran") asked him: "Boy, what are you doing with that blue cable?" He asserted that the use

of the word "boy" connotes that African American men are inferior to white men. (Id. ¶ 6). On January 7, 2011, in his first adverse encounter with Snook, Acevedo alleged that his request made to Curran to reassign the service tickets to Snook was granted. Thereafter, Snook became beligerant and vulgar. (Id. ¶ 4). He further averred that Curran did not display this behavior to white employees. (Id. ¶ 5). On February 1, 2013, Acevedo was introduced to an AT&T salesperson by Curran. The AT&T salesperson allegedly said to Curran in reference to Acevedo "he is black," (Id. ¶ 7).

He averred that the environment was racially biased. (Id.) Acevedo averred that on February 14, 2013, Curran used the words "my nigger" three times complaining that he could not use these words because of an upcoming diversity class. (Id. ¶ 8). Acevedo claimed that this word was used to belittle African American men in general and him in particular. (Id.)

Next, Acevedo claimed that on February 25, 2013, Curran became hostile towards him and used vulgarities while they were in the wood shop classroom at the high school. (Id. ¶ 9).

4

Acevedo claimed that on March 12, 2013, after completing a service call, he returned to his work station and found attached to his computer monitor a letter-sized picture of "Uncle Ben" whom Acevedo described as "the black rice man." When he inquired, the whole office laughed. (Id. ¶ 10).  He claimed that this contributed to a hostile work environment. (Id.).

Next, Acevedo averred that on June 24, 2013, when Acevedo complained to Curran about the lunch the previous Friday, Curran became "warlike" and screamed at him. He further claimed that Curran approached him with a fighting demeanor. (Id. ¶ 11). He asserted this behavior was designed to inflict emotional distress upon him. (Id.).

The next incident allegedly occurred in April 2014 when Acevedo took the middle school keys home after work and the next day, Curran blocked Acevedo's path to the key cabinet as he was attempting to return them. Curran chastised Acevedo despite the fact that Acevedo claims that there is an unwritten policy whereby the employees are allowed to take keys home overnight if it was the last IT task in the field and exceeds the employee's normal quitting time.  (Id. ¶ 12).

Further, Acevedo claims that his co-worker, Ricky Rodriguez, was treated differently by Curran. (Id. ¶ 13).[2] For example, Acevedo alleged that Rodriguez and Acevedo hung an expensive smart board in the high school. Later, it fell and cracked after Rodriguez decided to return alone to readjust it. Rodriguez was not the subject of any verbal chastising from Curran. (Id. ¶ 13).

Next, Acevedo alleged that on August 26, 2014, after returning from a service call, Acevedo told Curran that the cafeteria directors requested that Photoshop be installed onto the computer systems.  After being advised of this request, Curran became verbally beligerant to Acevedo. (Id. ¶ 14).  Others in the vicinity who heard the alleged verbal abuse began encouraging Curran to continue the abuse by chanting his name, i.e. "Joe." At one point, Curran walked away from Acevedo and slammed his hand into a blue metal storage closet in an open cubicle. (Id.)

Finally, Acevedo claimed that on September 2, 2014, he was suspended without pay as a result of a physical altercation that he had with Snook. The human resources director, Steve Brodmerkel ("Brodmerkel") allegedly would not listen to Acevedo's explanation of his

---

[2] We assume that this incident also occurred in April 2014.

6

version of the events. But rather, Brodmerkel told Acevedo that he would recommend to the school board that Acevedo be terminated. Brodmerkel thereafter advised Acevedo to either resign or be terminated. Acevedo further averred that the September 2, 2014, incident with Snook occurred when he returned to his work area before eleven o'clock in the morning. The altercation involved a mileage expense report which Snook was preparing, and as he was doing so, Snook began reprimanding Acevedo claiming that the report was wrong and said so in a degrading tone of voice and demeanor. Both Acevedo and Snook screamed at each other after Snook jumped out of his chair and aggressively came toward Acevedo with the intent to intimidate him. Snook was leaning up against Acevedo with his shoulder in the middle of Acevedo's chest. Acevedo was fearful of Snook because he was allegedly known to carry a "Black jack Knife" in his right pocket.(Id. ¶¶ 15-18). He further alleged that "a reasonable person" under similar circumstances would consider the work place to be hostile, intimidating, abusive, and racist. (Id. ¶ 28).

He also alleged that his termination was unlawful and on three occasions, he requested a hearing before the school board. (Id.). He further averred that the school district scheduled three hearing dates— — two of

which were postponed allegedly on the basis that the school district's witnesses were unavailable. (Id. ¶ 22). At the hearing scheduled for June 4, 2015, Snook was not present, thereby precluding Acevedo from confronting and examining Snook. (Id. ¶ 23). This caused Acevedo to tender his resignation because he was denied a meaningful hearing within a reasonable period of time. (Id.) Further, he alleged that his position had been already filled before June 4, 2015, causing him to question the impartiality of the school board as the adjudicating body. (Id.).

Finally, he claims the school district retaliated against him because of the filing of an EEOC complaint. (Id. ¶ 24).

III.   Legal Standards

     A.   12(b)(6) Motion to Dismiss

Rule 12 (b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief is granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (citing

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007)).  Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." Morrow v. Balaski, 719 F.3d 160, 165 (3d Cir. 2013) (quoting Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007)).

Under Rule12(b)(6), the school district has the burden of showing that no claim has been stated. Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991); Johnsrud v. Carter, 620 F.2d 29, 32-33 (3d Cir. 1980); Holocheck v. Luzerne Cty. Head Start, Inc., 385 F. Supp. 2d 491, 495 (M.D. Pa. 2005).  In deciding the motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellab, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).  The court may also consider "undisputedly authentic document[s] that a school district attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).  Moreover, "documents whose contents are alleged in the

complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." <u>Pryor v. Nat'l Collegiate Athletic Ass'n</u>, 288 F.3d 548, 560 (3d Cir. 2002).

## IV.   Discussion

The school district's motion asserts that the complaint should be dismissed because it does not sufficiently establish a claim of race discrimination or retaliation. (Doc. 8).

In determining the sufficiency of the complaint, we "must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such entitlement with its facts." <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009) (citations omitted).

### A.   Title VII Discrimination

Absent direct proof of purposeful discrimination, a Title VII plaintiff must establish an appropriate inference of discriminatory intent through the framework established in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), and its progeny. The test must be varied to consider different employment situations and different alleged acts of discrimination. The

Third Circuit has suggested that a plaintiff alleging discriminatory discharge must prove that (1) he was a member of a protected class, (2) he was qualified for the position from which he was discharged, and (3) others not in the protected class were treated more favorably. Weldon v. Kraft, Inc., 896 F.2d 793, 797 (3d Cir. 1990). The Third Circuit has admonished courts to avoid mechanical applications of the standard:

> Simply put, a Title VII plaintiff has established a prima facie case when sufficient evidence is offered such that the court can infer that if the employer's actions remain unexplained, it is more likely than not that such actions were based on impermissible reasons.

EEOC v. Metal Serv. Co., 892 F.2d 341, 348 (3d Cir. 1990). In considering a motion under Rule 12(b)(6), we must accept as true all the well-pleaded allegations of the complaint and construe them favorably to the plaintiff. Warren Gen. Hosp., 643 F.3d at 84. In the context of the current motion, we believe that to mean that Acevedo must minimally plead a prima facie case of discrimination. Rogers v. Mount Union Borough ex rel. Zook, 816 F. Supp. 308 (M.D. Pa. 1993).

### 1.    Race Discrimination

Acevedo brings his race discrimination claim under Title VII. In order to determine whether Acevedo's complaint withstand's a motion

to dismiss for failure to state a claim upon which relief can be granted, we are guided by the following rules. In order for an employee to establish a claim of racial harassment, a plaintiff must show the following five elements:

> (1) [plaintiff] suffered intentional harassment based on race; (2) the harassment was severe or pervasive; (3) the harassment detrimentally affected [plaintiff]; (4) the harassment would have detrimentally affected a reasonable person in like circumstances; and (5) there is a basis for employer liability [under agency law].

Taylor v. JFC Staffing Assocs., 690 F. Supp. 2d 357, 367-68 (M.D. Pa. 2009).

### 2.    Retaliation

Section 704(a) of Title VII states in relevant part that "[i]t shall be an unlawful employment practice for an employer to discriminate against [an employee] . . . because he has made a charge" of discrimination against the employer. 42 U.S.C. §2000e-3(a). To establish a *prima facie* case of retaliation under Title VII, the plaintiff must produce "evidence that: (1)   he engaged in activity protected by Title VII; (2) the employer took an adverse employment action against him; and (3) there was a causal connection between his participation in the protected activity and

12

the adverse employment action. <u>Moore v. City of Philadelphia</u>, 461 F.3d 331, 340-41 (2006). In assessing whether there is a causal connection, the Third Circuit has focused on the temporal proximity of the protected activity and the adverse employment action, as well as whether or not there is a pattern of antagonism. <u>Jensen v. Potter</u>, 435 F.3d 444, 450 (3d Cir. 2006), <u>overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53 (2006). Also, the "retaliatory conduct must be serious and tangible enough to alter an employee's compensation, terms, conditions or privileges of employment." <u>Robinson v. City of Pittsburgh</u>, 120 F.3d 1286, 1300 (1997). An objective standard is used to determine whether "a reasonable employee would have found the alleged retaliatory actions 'materially adverse' in that they 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" <u>Moore</u>, 461 F.3d at 341 (quoting <u>White</u>, 548 U.S. at 68).

We conclude that the complaint makes out a case sufficient to withstand the motion to dismiss, especially as we are required to construe the complaint liberally and to accept the well-pleaded facts as true. Also, we review it with other documents such as the exhibits to the complaint. In the complaint, Acevedo alleged that he is African American and that he

was qualified and served in the position of Computer Technician from December 6, 2012. He further alleged that he was terminated from the work force on September 17, 2014, after the alleged aggressive altercation with Snook and without a hearing.  He alleged a racially hostile work environment. He further alleged that Snook, a white employee, was not subject to any disciplinary action while Acevedo was suspended as a result of their altercation. Also, other similarly situated employees were treated more favorably in the work place. Acevedo claims that the school district retaliated against him because of the filing of an EEOC complaint. (Doc. 1 ¶ 34). The school district seeks to dismiss this count because the EEOC complaint followed his termination. However, a fair reading of the complaint reflects that the retaliating conduct of which Acevedo complains refers to the school district withholding certain benefits such as mileage reimbursement, vacation pay, and personal-day pay after he filed his EEOC complaint. (Doc. 1 ¶ 24).  Under those circumstances, Acevedo's complaint is sufficient to withstand a Rule 12(b)(6) motion to dismiss in that he has sufficiently pled a *prima facie* case under Title VII.  We will, therefore, recommend that the motion to dismiss be denied with respect to the plaintiff's Title VII claims.

B.     §1983 Fourteenth Amendment Claim

Acevedo has alleged that his Fourteenth Amendment rights were violated when he was not provided a hearing. He brings this count under 42 U.S.C. § 1983. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. City of Oklahoma v. Tuttle, 471 U.S. 808, 816 (1985). To establish a § 1983 claim, the plaintiff must establish that the defendant, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995). To avoid dismissal for failure to state a claim, a civil rights complaint must state the conduct, time, place, and persons responsible for the alleged civil rights violations. Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

"On its face, § 1983 makes liable 'every person' who deprives another of civil rights under color of state law." Burns v. Reid, 500 U.S. 478, 497 (1991) (Scalia, J., concurring in part and dissenting in part). In Monell v. Department of Social Services, 436 U.S. 658 (1978), the Supreme Court of the United States established that municipalities and other local governmental units are included among those "persons" subject to liability under § 1983. Id. at 690. A school district is such a municipality subject to liability as a "person" under § 1983. See Fitzgerald v. Barnstable Sch. Comm., 555 U.S. 246, 257-58 (2009), Mann v. Palmerton Area Sch. Dist., 33 F. Supp. 3d 530, 540 & n.2 (M.D. Pa. 2014).

But "[u]nder Monell, a municipality cannot be subjected to liability solely because injuries were inflicted by its agents or employees." Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 249 (3d Cir. 2007). Rather, a municipality can be liable under § 1983 only if the conduct alleged to be unconstitutional either "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or is "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." Monell, 436 U.S. at 690–91. "[I]t is

16

when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." <u>Jiminez</u>, 503 F.3d at 249. "A plaintiff must identify the challenged policy, attribute it to the [municipality] itself, and show a causal link between execution of the policy and the injury suffered." <u>Losch v. Borough of Parkesburg</u>, 736 F.2d 903, 910 (3d Cir. 1984).

The complaint in this case does not identify such policy or custom adopted or promulgated by the school district with respect to the underlying alleged discriminatory and retaliatory conduct by its IT director and staff. But the plaintiff has also alleged the school board itself constructively denied him a pre-termination hearing by repeatedly and unreasonably rescheduling the hearing over the course of the better part of a year, all while the plaintiff remained suspended without pay. Such action by the governing body at a municipality "may be fairly said to represent the official policy" of that municipality. <u>See</u> <u>Kuchka v. Kile</u>, 634 F. Supp. 502, 506-08, 513 (M.D. Pa. 1985) ("clearly a municipality may be held liable under Section 1983 for its employment related decisions.");

McDonald v. McCarthy, Civil Action No. 89-319, 1990 WL 131393, at *4 - *5 (E.D. Pa. Sept. 7, 1990) ("Plaintiff must [allege] that the failure to provide plaintiff with due process resulted from an official act of a decision-maker with authority to bind the [municipality].); Dix v. City of Philadelphia, Civil Action No. 15-532, 2015 WL 4624248, at *10 (E.D. Pa. Aug. 3, 2015) (allegation that municipality terminated plaintiff's employment without a hearing stated a Monell claim); Stevens v. Telford Borough, Civil Action No. 11-7216, 3013 WL 2292047, at *2 - *3 (E.D. Pa. May 23, 2013) (same).

Accordingly, we will recommend that the motion to dismiss be denied with respect to the plaintiff's § 1983 Monell claim.

C.    Punitive Damages

Acevedo seeks punitive damages against the school district in his complaint. (Doc. 1 at 21). The school district moves to dismiss Acevedo's request for punitive damages in that they are not available in either a Title VII or §1983 claim. We agree. It is well-settled that where the employer is a municipality, punitive damages are not available under Title VII. Udujih v. City of Philadelphia, 513 F. Supp. 2d 350, 358 (E.D. Pa. 2007). Also, §1983 does not permit punitive damages against

18

municipal entities, including school boards. <u>City of Newport v. Fact Concerts, Inc.</u>, 453 U.S. 247, 271 (1981) (["W]e hold that a municipality is immune from punitive damages under 42 U.S.C. §1983."); <u>see also</u>, <u>Jackson v. Dallas School District</u>, 954 F. Supp. 2d 304, 314 (M.D. Pa. 2013) (applying <u>City of Newport</u> to a school system. Therefore, we will recommend that Acevedo's request for punitive damages against the school district be dismissed with prejudice.

 D. <u>Leave to Amend</u>

 In the Third Circuit, a court must grant leave to amend before dismissing a civil rights complaint for failure to state a claim. <u>See</u>, <u>Kissell v. Dep't of Corrs.</u>, 634 Fed. App'x 876, 879-80 (3d Cir. 2015) (per curiam). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." <u>Alston v. Parker</u>, 363 F.3d 229, 236 (3d Cir. 2004).  Based on the facts alleged in the complaint and the well-settled law that punitive damages are not recoverable against a municipal employer in Title VII and §1983 cases, it is clear that any amendment with respect to the request for punitive damages would be futile. Therefore, we recommend that leave to amend be denied with respect to dismissal of Acevedo's request for punitive damages.

E.   <u>Defendant's Alternative Request for Plaintiff to Replead</u>

Alternatively, the school district, has requested the court to order that Acevedo replead for allegedly failing to comply with Fed. R. Civ. P. 8 and 10. While we agree that Acevedo's complaint is inartfully drafted and in some respects lacks clarity, a *pro se* litigants' pleadings are held to less stringent standards then formal pleadings drafted by lawyers. <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972). In interpreting the pleadings of *pro se* litigants, the Third Circuit has held that courts "have a special obligation to construe [the] complaint liberally." <u>Higgs v. Attorney Gen.</u>, 655 F.3d, 333, 339 (3d Cir. 2011).  As we are required to liberally construe Acevedo's *pro se* pleadings, we find that he adequately pled his allegations and they are capable of being answered by the school district. Accordingly, we will recommend that the school district's alternative request that Acevedo be required to replead be denied.

V.   <u>Recommendation</u>:

Based upon the foregoing, it is RECOMMENDED that:

(1)   The school district's motion to dismiss (Doc. 32) be GRANTED IN PART and DENIED IN PART;

(2)    The school district's motion to dismiss be GRANTED with respect to the plaintiff's request for punitive damages and that the request for punitive damages be DISMISSED WITH PREJUDICE;

(3)    The school district's motion to dismiss otherwise be DENIED.

(4)    The school district be directed to respond to the complaint following the disposition of this motion as provided by Fed. R. Civ. P. 12(a)(4)(A); and

(5)    The matter be remanded to the undersigned for further proceedings.

*s/ Joseph F. Saporito, Jr.*
JOSEPH F. SAPORITO, JR.
United States Magistrate Judge

Dated: September 27, 2016

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTOINE ACEVEDO, | : | No.: 3:15-cv-02035 |
| Plaintiff, | : | |
| | : | (Judge Caputo) |
| v. | : | (Magistrate Judge Saporito) |
| | : | |
| STROUDSBURG SCHOOL | : | |
| DISTRICT, | : | |
| Defendant. | : | |

NOTICE

NOTICE IS HEREBY GIVEN that the undersigned has entered

the foregoing Report and Recommendation dated September 27, 2016.

Any party may obtain a review of the Report and Recommendation

pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed
> findings, recommendations or report addressing a motion or
> matter described in 28 U.S.C. § 636 (b)(1)(B) or making a
> recommendation for the disposition of a prisoner case or a
> habeas corpus petition within fourteen (14) days after being
> served with a copy thereof.  Such party shall file with the
> clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify
> the portions of the proposed findings, recommendations or
> report to which objection is made and the basis for such
> objections.  The briefing requirements set forth in Local Rule
> 72.2 shall apply.  A judge shall make a *de novo*
> determination of those portions of the report or specified
> proposed findings or recommendations to which objection is
> made and may accept, reject, or modify, in whole or in part,
> the findings or recommendations made by the magistrate
> judge. The  judge, however need conduct a new hearing

only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge making his or her own determination on the basis of that record.   The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


Failure to file timely objections to the foregoing Report and

Recommendation may constitute wavier of any appellate rights.

<u>**s/ Joseph F. Saporito, Jr.**</u>
JOSEPH F. SAPORITO, JR.
United States Magistrate Judge


Dated: September 27, 2016